1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Eric Volk,

Plaintiff,

v.

Kilolo Kijakazi, Commissioner of Social Security,

Defendant.

Case No. 2:20-cv-00738-DJA

**Order**

12
13
14
15
16
17
18

Before the Court is *pro se* Plaintiff Eric Volk's motion for reversal or remand and requesting new evidence be admitted to the record (ECF No. 27); the Commissioner's cross motion to affirm (ECF No. 28) and response (ECF No. 29); and Plaintiff's reply, styled as a cross motion (ECF No. 32). Because the Court finds that the ALJ's decision was supported by substantial evidence, it denies Plaintiff's motions (ECF Nos. 27 and 32) and grants the Commissioner's cross motion (ECF No. 28). The Court finds these matters properly resolved without a hearing. LR 78-1.

19    **I.    Background.**

20        ***A.    Procedural history.***

21
22
23
24
25
26

Plaintiff filed an application for disability insurance benefits in April of 2016, alleging an onset of disability commencing May 19, 2015. (AR 151-57). The agency denied Plaintiff's application initially and upon reconsideration. (AR 93-97). After two administrative hearings, the ALJ issued an unfavorable decision on February 4, 2019. (AR 18-37). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 22, 2020, making the ALJ's decision the final agency decision. (AR 5).

27
28

1

2    **B.    *The ALJ decision.***

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

3    §§ 404.1520.  (AR 21-37).  At step one, the ALJ found that Plaintiff had not engaged in

4    substantial gainful activity since May 19, 2015.  (AR 23).  At step two, the ALJ found that

5    Plaintiff has the following severe impairments: adjustment disorder with mixed anxiety and

6    depressed mood, unspecified bipolar disorder by history and posttraumatic disorder.  (AR 23).  At

7    step three, the ALJ found that the Plaintiff does not have an impairment or combination of

8    impairments that meets or medically equals the severity of one of the listed impairments in 20

9    C.F.R. Part 404, Subpart P, Appendix 1.  (AR 24).  In making this finding, the ALJ considered

10   Listings 12.04, 12.06, and 12.15.  (AR 24).

11   At step four, the ALJ found that Plaintiff has a residual functional capacity to perform "a

12   full range of work at all exertional levels…"  (AR 27).  The ALJ added that Plaintiff would have

13   the following nonexertional limitations: "he can understand and remember tasks, sustain

14   concentration and persistence, socially interact with the public, coworkers and supervisors and

15   adapt to workplace changes frequently enough to perform unskilled jobs that will require short

16   simple instructions."  (AR 27).  At step five, the ALJ found that Plaintiff was unable to perform

17   past relevant work.  (AR 36).  However, the ALJ found Plaintiff capable of performing

18   occupations such as hand packager, and laundry laborer.  (AR 37).  Accordingly, the ALJ found

19   that Plaintiff had not been disabled from May 19, 2015.  (AR 37).

20   **II.    Standard.**

21   The court reviews administrative decisions in social security disability benefits cases

22   under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section

23   405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security

24   made after a hearing to which he was a party, irrespective of the amount in controversy, may

25   obtain a review of such decision by a civil action…brought in the district court of the United

26   States for the judicial district in which the plaintiff resides."  The court may enter, "upon the

27   pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

28   decision of the Commissioner of Social Security, with or without remanding the case for a

1    rehearing." *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or

2    reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190,

3    1193 (9th Cir. 2003).

4            The Commissioner's findings of fact are conclusive if supported by substantial evidence.

5    *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

6    Commissioner's findings may be set aside if they are based on legal error or not supported by

7    substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir.

8    2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines

9    substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

10   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d

12   1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are

13   supported by substantial evidence, the court "must review the administrative record as a whole,

14   weighing both the evidence that supports and the evidence that detracts from the Commissioner's

15   conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80

16   F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if

17   supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the

18   evidence will support more than one rational interpretation, the court must defer to the

19   Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten

20   v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

21   **III.    Disability evaluation process.**

22           The individual seeking disability benefits has the initial burden of proving disability.

23   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must

24   demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

25   determinable physical or mental impairment which can be expected . . . to last for a continuous

26   period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual

27   must provide "specific medical evidence" in support of him claim for disability.  20 C.F.R.

28   § 404.1514.  If the individual establishes an inability to perform his prior work, then the burden

shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not

meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

1    **IV.    Analysis and findings.**

2         Plaintiff asserts myriad arguments against the ALJ's decision, some of which appear in

3    multiple places throughout his brief.  Plaintiff's arguments can be summarized as: (1) that the

4    Court should remand based on new evidence; (2) that the ALJ gave too much weight to Dr.

5    Azizollah Karamlou's opinion; (3) that the ALJ "cherry picked" and gave improper weights to the

6    opinions of Drs. Perez, Foerster, Mallare, and Cheathum; (4) that the ALJ erred in not considering

7    all the hypotheticals posed to the vocational expert; and (5) that the ALJ's statements that

8    Plaintiff stopped certain medication in one instance and was released to return to work on another

9    are contradicted by the record.  As outlined below, the Court denies Plaintiff's request to remand

10   the case on these arguments.

11        *A.    The Court declines to remand the case based on Plaintiff's new evidence.*

12        Plaintiff moves the Court to remand the case because he has presented new evidence

13   consisting of: (1) a report from Dr. Cranford Scott dated September 19, 2019; (2) treatment notes

14   from Dr. John Chia dated June 18, 2019; and (3) emails dated February 23, 2018, September 13,

15   2018, September 18, 2018, and September 30, 2019 between Plaintiff and his former attorney.

16   (ECF No. 27 at 17-30).  The Commissioner responds that—other than the emails in 2018—these

17   documents are dated after the final decision of the Commissioner dated April 2, 2019.  (ECF No.

18   28 at 8).  And Plaintiff does not explain why he did not submit the emails from before the final

19   decision earlier or how the emails demonstrate a reasonable possibility of changing the outcome

20   of the decision.  (*Id.*).  Plaintiff replies that the Commissioner's final decision was really dated

21   February 22, 2020, when the Appeals Council denied review.  (ECF No. 32 at 11).  He adds that

22   the emails concern his chronic fatigue syndrome and that the record contains reference to some of

23   the emails.  (*Id.* at 12-13).

24        For the Court to remand based on new evidence, the plaintiff must first show that the

25   evidence is material and, second, provide good cause for having failed to present the new

26   evidence to the ALJ earlier.  *Mayes v. Massanari*, 276 F.3d 453, 461-62 (9th Cir. 2001).  Plaintiff

27   has done neither.  First, Plaintiff argues that Dr. Scott's new report addresses Plaintiff's work

28   restrictions.  (ECF No. 27 at 2).  But Dr. Scott concluded that Plaintiff's work restrictions should

"include no heavy work and undue stressful environment."  (*Id.* at 21).  The Court does not find

that this evidence would have changed the outcome of the ALJ's decision that Plaintiff is not

disabled.  And while Plaintiff argues that Dr. Chia's report discredits the ALJ's conclusion that

Plaintiff had stopped taking his medications, as discussed more fully below, while the ALJ's

conclusion was wrong (as demonstrated by reports already contained in the record), the error was

harmless.  (*Id.* at 2).

Second, although Plaintiff is correct that the ALJ's decision became the final decision of

the commissioner on February 22, 2020, the ALJ issued his decision on April 2, 2019.  After that

point, the Appeals Council denied review, meaning that they did not accept or review any more

records.  Records dated after April 2, 2019 were thus not included in the Commissioner's final

decision.  But even if the Court accepted Plaintiff's arguments that the records were created

before the final decision of the Commissioner, Plaintiff still does not explain why he did not

produce them sooner.  The Court thus denies Plaintiff's request to remand based on new

evidence.

### B.    *The ALJ did not err in assigning Dr. Karamlou's opinion substantial weight*.

Plaintiff argues that the ALJ gave too much weight to Dr. Azizollah Karamlou's opinion

because Dr. Karamlou was an examining, not a treating physician.[1]  (ECF No. 27 at 2-4).  The

ALJ pointed out that Dr. Karamlou's opinion finding "no restriction in the claimant's ability to

sit, stand, walk, lift, carry, push, pull, crawl, crouch, etc." was consistent with the findings of Dr.

Robert B. Hosseni (who noted that Plaintiff has occasional gastro esophageal reflux disease

(GERD) symptoms and epigastric discomfort) and the record establishing only slight

---

[1] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for
claims filed on or after March 27, 2017.  *Revisions to Rules Regarding the Evaluation of Medical
Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c,
416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary
weight ... to any medical opinion(s)...."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844,
at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Here, Plaintiff applied for benefits on
April 26, 2016.  (AR 21).  This would, therefore, make the old regulations discussed above
applicable to Plaintiff's claims.  20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017,
the rules in § 404.1527 apply.").  The Court thus applies the old regulations to Plaintiff's claims
throughout this order.

1   abnormalities. (AR 23-24).  Plaintiff points to other opinions on the record from Dr. Hosseni—a

2   treating physician—and Dr. Effiom[2]—his primary care physician—to support his argument that

3   Dr. Karamlou's opinion was inconsistent with the record.  (*Id.*).  The Commissioner responds that

4   Dr. Hosseni's examinations of Plaintiff included normal findings, with which Dr. Karamlou's

5   opinion was properly consistent.  (ECF No. 28 at 10-11).  Plaintiff replies and reiterates that Dr.

6   Hosseni noted Plaintiff was experiencing stress and referred Plaintiff to specialists who concluded

7   that Plaintiff's symptoms prevented him from working.  (ECF No. 32 at 18).

8          Within the administrative record, an ALJ may encounter medical opinions from three

9   types of physicians: treating, examining, and non-examining.  *See Valentine v. Comm'r of Soc.*

10  *Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  For claims filed before March 27, 2017, each

11  type is accorded different weight.  20 C.F.R. §§ 404.1527, 416.927.  Generally, more weight is

12  given to the opinion of a treating source than the opinion of a doctor who did not treat the

13  claimant.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

14         Medical opinions and conclusions of treating physicians are accorded special weight

15  because these physicians are in a unique position to know claimants as individuals, and because

16  the continuity of their dealings with claimants enhances their ability to assess the claimants'

17  problems.  *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *see also Bray v. Comm'r*

18  *of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is

19  entitled to 'substantial weight.'").  *Palmer v. Berryhill*  stands for the proposition that, if a

20  consultative examiner's opinion is consistent with the other record evidence, then the ALJ may

21  properly find it worth substantial weight.  *See Palmer v. Berryhill*, No. 2:16-cv-02312-CWH,

22  2018 WL 2432939, at *4 (D. Nev. May 29, 2018).  Additionally, an ALJ may properly reject a

23  treating physician opinion that is based to a large extent on a claimant's self-reports.  *See Ghanim*

24  *v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

25

26

27   [2] Plaintiff refers to "Dr. Illure" but the page to which he cites for this opinion refer to a Dr. Udak

28   R. Effiom.

1   Here, although Plaintiff points out portions of the record with which he believes Dr.

2   Karamlou's opinion is inconsistent, these records do not demonstrate findings contrary to Dr.

3   Karamlou's.  The Court has reviewed these portions of the record and, while they do outline

4   Plaintiff's symptoms including his subjective reports of stress, epigastric pain, and fatigue, they

5   contain largely normal objective findings.  (AR 426, 427, 781, 782, 800, 898, 904, 912).  These

6   findings are not inconsistent with Dr. Karamlou's conclusion that Plaintiff had no restrictions in

7   sitting, standing, walking, lifting, carrying, pushing, pulling, crawling or crouching.  The ALJ

8   thus appropriately gave Dr. Karamlou's opinion substantial weight.

9       **C.      The ALJ properly analyzed Drs. Perez, Foerster, Mallare, and Cheathum's**

10          **opinions.**

11   Plaintiff argues that the ALJ improperly considered only the portions of Dr. Alejandro

12   Perez, Dr. Lisa M. Foerster, Dr. Marie King, and Dr. Tracy Cheathum's opinions that did not

13   support a finding of disability, ignoring other portions that did.  (ECF No. 27 at 4-6, 11-13).  He

14   adds that the ALJ gave Dr. L. Mallare—a state agency psychiatric consultant—too much weight

15   because Dr. Mallare's opinion is inconsistent with Dr. Foerster's  (*Id.* at 6).  Plaintiff states that

16   Dr. Foerster's "assessment meets the criteria of listings in 12.04, 12.06, and 12.15 and satisfy the

17   'paragraph B criteria.'"  (*Id.* at 5).

18   The Commissioner responds that many of Dr. Perez' records indicate normal objective

19   findings.  (ECF No. 28 at 10-11).  The Commissioner adds that Dr. Foerster's opinion that

20   Plaintiff had no limitations on his ability to understand, remember, and carry out instructions;

21   moderate limitations on his ability to interact with others; and no limitations on his ability to

22   concentrate, persist, or maintain pace, were supported by Dr. Foerster's evaluation.  (*Id.* at 11-12).

23   Regarding Dr. Mallare, the Commissioner explains that the opinion was consistent with the ALJ's

24   RFC findings, which did not include any limitations on social functioning.  (*Id.* at 12).  The

25   Commissioner points out that the portions of the record to which Plaintiff cites do not undermine

26   the ALJ's findings regarding Dr. Perez and Dr. Foerster.  (*Id.*).  Instead, the ALJ used Dr. Perez'

27   statements to find in Plaintiff's favor (that he could not return to his prior job) and Dr. Foerster

28

did not find that Plaintiff's limitations satisfied the paragraph B criteria[3] like Plaintiff asserts. (*Id*).  The Commissioner does not address Drs. King or Cheathum.

Plaintiff replies that Dr. Perez "place[d] him on total disability," an opinion with which Dr. King agreed.  (ECF No. 32 at 19).  Plaintiff reiterates his statement that Dr. Foerster opined that Plaintiff met the paragraph B criteria for step two.  (*Id.*).  He also reiterates his arguments regarding Dr. Mallare.  (*Id.*).

In determining disability, the ALJ must develop the record and interpret the medical evidence.  *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir.1996).  In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  20 C.F.R. § 416.923.  However, in interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence."  *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).  On the other hand, the ALJ may not "cherry-pick" from mixed results to support a denial of benefits.  *See Garrison v. Colvin*, 759 F.3d 995, 1017 n. 23 (9h Cir. 2014) (citing *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) which discussed mixed results relating to bipolar disorder, a disease the very nature of which is fluctuations in symptoms so, "any single notation that a patient is feeling better…does not imply that the condition has been treated").

Remand is not warranted on Plaintiff's arguments.  Regarding Dr. Perez, having reviewed Plaintiff's and the ALJ's cites to the record, the Court does not find that the ALJ "cherry-picked" from mixed results, but rather addressed the objective findings of those records, rather than the

---

[3] "Paragraph B criteria" refers to a subsection of listings 12.04, 12.06, and 12.15 providing the functional criteria that the Social Security Administration assesses to determine how a plaintiff's mental disorder limits their functioning. *See Medial/Professional Relations: Disability Evaluation Under Social Security*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited July 20, 2022).  To satisfy the "paragraph B" criteria, "the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves."  (AR 24).

subjective reports.  (AR 432-36, 502, 633-34, 641, 664-65, 672, 675-76, 695, 737, 739, 751, 758).
Regarding Dr. Foerster, the Court agrees with the Commissioner that Plaintiff requests a different
interpretation of the evidence because Dr. Foerster did not find that Plaintiff had higher than
"moderate" limitations in any broad area of functioning.  (AR 955-59, 960-67).  And Dr.
Mallare's opinion, finding Plaintiff only moderately limited, is consistent with Dr. Foerster's
opinion.  (87-89).  While the Commissioner does not address Dr. King's report, the pages
Plaintiff cites do not stand for the proposition that either Dr. King or Dr. Perez found that Plaintiff
should be "on total disability."  (AR 1046-47).  And while the Commissioner also does not
address Dr. Cheathum's report, Plaintiff's argument that "ALJ Graham gives no weight to Dr.
Cheathum's diagnosis of Mr. Volk's severe depression and anxiety," is erroneous.  (ECF No. 27
at 11).  To the contrary, the ALJ noted that Dr. Cheathum included severe anxiety, depression,
and chronic fatigue in his diagnosis and ultimately found that Dr. Cheathum's opinion was
consistent with Plaintiff's clinical signs and thus, given weight.  (AR 31).  Moreover, Dr.
Cheathum deferred to a mental health provider for the diagnoses of severe anxiety and
depression, and noted that for chronic fatigue, Plaintiff's exams were within normal limits with
no abnormalities noted.  (AR 953).   The Court thus does not find that remand is warranted based
on Plaintiff's arguments regarding Drs. Perez, Foerster, Mallare, King, or Cheathum.

### D. The ALJ did not err in relying on the vocational expert's response to one hypothetical.

Plaintiff argues that the ALJ erred in not addressing Plaintiff's former attorney's
hypotheticals to the vocational expert or the ALJ's narrower hypothetical.  (ECF No. 27 at 14).
The Commissioner does not address the vocational expert's testimony in response, noting only
that the vocational expert "provided three representative occupations that Plaintiff could perform
given the limitations in the RFC findings, all of them unskilled work."  (ECF No. 28 at 5).
Plaintiff replies that the ALJ erred in stating that jobs existed in the national economy for Plaintiff
when the vocational expert stated that, given Plaintiff's nonexertional limitations brought up by
his attorney and the ALJ's narrower hypothetical, there were not.  (ECF No. 32 at 9).

1          During the hearing, the ALJ posed a hypothetical to the vocational expert using Plaintiff's

2    RFC: an individual with the ability to perform all work in a physical sense, who can understand

3    and remember tasks, can sustain concentration and persistence, can socially interact with the

4    general public, coworkers, and supervisors, and can adapt to workplace changes frequently

5    enough to perform unskilled jobs that would require short, simple instructions.  (AR 73-74).  The

6    vocational expert opined that examples of work under this hypothetical would include hand

7    packager, laundry laborer, or cleaner.  (AR 74).  The ALJ then narrowed the assumption, asking

8    the vocational expert to assume that "the mental limitations would seldom or never allow for

9    those previously named mental functions" of sustaining concentration, and persistence,

10   interacting with others, and adapting to workplace changes.  (AR 74).  The vocational expert

11   opined that an individual with those mental limitations could not perform any of the jobs

12   described.  (AR 74).

13         Plaintiff's attorney then posed a hypothetical of someone with the same age, education,

14   and past work experience as Plaintiff, but limited to occasional and brief interaction with the

15   general public, coworkers, and supervisors and limited to a low-stress environment.  (AR 75).

16   The vocational expert opined that under that hypothetical, the hand packager job would be

17   eliminated.  (AR 75).  Plaintiff's attorney then asked the vocational expert to consider someone

18   who would be absent at least once per week on an unscheduled basis.  (AR 75).  The vocational

19   expert opined that the hypothetical would preclude work.  (AR 75).  The vocational expert also

20   opined that being off task for 25% or more of the day or unable to complete a normal workday

21   without unscheduled interruptions at least two times per shift and unscheduled breaks of about

22   one to two hours would also preclude employment.  (AR 76).

23         While hypotheticals posed to a vocational expert must include all limitations and

24   restrictions of the claimant, the hypotheticals need not included all *alleged* limitations.  *See*

25   *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157,

26   1164-65 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Copeland*

27   *v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988); *Martinez v. Heckler*, 807 F.2d 771, 773-74 (9th Cir.

28   1986).  "An ALJ is free to accept or reject restrictions in a hypothetical question that are not

1  supported by substantial evidence." *Osenbrock*, 240 F.3d at 1164.  In *Osenbrock*, the ALJ posed

2  a hypothetical to the vocational expert limited to a plaintiff's hearing and physical limitations

3  related to his degenerative disc disease.  *See id.* at 1164.  The vocational expert opined that the

4  plaintiff could work as a timekeeper.  *See id.*  The ALJ then narrowed the hypothetical to include

5  side effects from medication, alcoholism, and poor conditioning, which the vocational expert

6  opined would prevent work as a timekeeper.  *See id.*  The ALJ relied exclusively on the

7  vocational expert's response to the first hypothetical.  *See id.*  The Ninth Circuit upheld this

8  reliance on appeal, noting that the record did not contain evidence of severe enough side effects

9  from medication, alcoholism, or poor conditioning to interfere with the plaintiff's work.  *See id.*

10       Here, the hypothetical that the ALJ posed to the vocational expert included all of

11  Plaintiff's RFC limitations that were supported by substantial evidence.  Indeed, the ALJ

12  conducted an extensive review of the record in determining Plaintiff's RFC and Plaintiff does not

13  argue that the RFC was in error.  (AR 27-36).  While the ALJ later narrowed the hypothetical to

14  address alleged limitations, he was free to reject the vocational expert's response because the

15  hypotheticals were not supported by substantial evidence, but rather by Plaintiff's allegations.

16  Plaintiff argues that the ALJ did not consider his testimony that he "may be able to work for a few

17  hours today and get tired and be really anxious and not able to finish up my day and not be able to

18  be there for the next couple of days."  (ECF No. 27 at 12).  But the ALJ was not required to rely

19  on the hypotheticals narrowed to include these allegations.  The Court declines to remand the case

20  on these grounds.

21       **E.**    **The ALJ's error in addressing Plaintiff's medications was harmless and the ALJ**

22             **did not err in stating that Plaintiff was discharged to full duty after a work**

23             **incident .**

24       Plaintiff makes additional claims that: (1) the ALJ erroneously stated that Plaintiff stopped

25  taking Equilibrant for his chronic fatigue; and (2) that Plaintiff was discharged to full duty  after

26  being hospitalized for an incident at his former job.  (ECF No. 28 at 6-8).  The Commissioner

27  responds to the first argument, that it was proper for the ALJ to consider Plaintiff's medication

28  history under the regulations and Ninth Circuit authority.  (ECF No. 28 at 12).  But the

Commissioner does not directly respond to Plaintiff's argument regarding being discharged to full duty.  Nonetheless, both of Plaintiff's arguments are without merit.

First, under the harmless error analysis, ALJ errors in social security cases are harmless if they are "inconsequential to the ultimate nondisability determination."  *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Although Plaintiff correctly asserts that the ALJ missed evidence in the record showing that Plaintiff had re-started his Equilibrant medication, that error is harmless.  In giving Dr. John Chia's opinion little weight, the ALJ noted that "there is no evidence the claimant restarted" Equilibrant after Dr. Chia noted he had stopped in August 2012.  (AR 30).  But Plaintiff points to Dr. Chia's record dated November 9, 2018, indicating that Plaintiff was taking ½ tablet of Equilibrant.  (ECF No. 27 at 8) (AR 327).

However, the ALJ's error in missing this record was harmless.  The ALJ used the purported lack of medication evidence as one reason to give little weight to Dr. Chia's opinion that Plaintiff "is incapable of even low stress jobs, would be off task 25% or more of the workday, [and] would miss more than four days per month[]"  (AR 30).  But the ALJ found other reasons—that Dr. Chia's opinion was inconsistent with the objective evidence and the opinions of other physicians—to give Dr. Chia's opinion little weight.  (AR 30).  And even if the ALJ had discussed the evidence that Plaintiff restarted his medications, the ALJ noted that they "managed the chronic fatigue syndrome very well."  (AR 30).  Plaintiff has not pointed to evidence or alleged that taking his medications either meant his chronic fatigue had worsened or that the medications were not helping.  Thus, Plaintiff has not shown that evidence that he was taking his medications again would have impacted the disability determination.  The ALJ's error was harmless.

Second, Plaintiff claims that the ALJ made a false statement by asserting that Plaintiff was discharged to full duty when Plaintiff's other doctors later excused him from work for anxiety, stress, fatigue, and depression.  (ECF No. 27 at 5).  The ALJ's statement references an incident at Plaintiff's former job as a hospital security officer.  (AR 28).  While working at the hospital, Plaintiff restrained a combative patient who punched Plaintiff and bit him.  (AR 28).  The ALJ noted that, after Plaintiff went to urgent care, "[h]e was treated and discharged to full duty."  (AR

29).  This statement is not erroneous and doctors' notes later excusing Plaintiff from work does not make it so.  To the contrary, in making the statement, the ALJ cites to the record where Plaintiff was "[i]nstructed to return to work at once with no limitations."  (AR 445).  The Court thus declines to remand on these arguments.

  **IT IS THEREFORE ORDERED** that Plaintiff's motion for remand and new evidence to be admitted (ECF No. 27) and Plaintiff's countermotion (ECF No. 32) are **denied.**

   **IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 28) is **granted.**  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

  DATED: July 22, 2022

            _____
            DANIEL J. ALBREGTS
            UNITED STATES MAGISTRATE JUDGE